**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Stacy D. LANTERMAN and Charles E.**
**Roberts, Defendants–Appellants.**

Nos. 94–2031, 94–2795.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1995.

Decided Feb. 9, 1996.

Rodger A. Heaton (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Jon G. Noll, Jeff Page (argued), Springfield, IL, for Defendant–Appellant.

D. Peter Wise (argued), Metnick, Wise, Cherry & Frazier, Springfield, IL, for Defendant–Appellant.

Before BAUER, MANION, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

In the week leading up to March 14, 1991, Stacy Lanterman, Charles Roberts, and several others conspired to purchase cocaine. Unfortunately for the conspirators, they purchased the cocaine from Michael Luster, an undercover Special Agent with the Illinois State Police. Each defendant pleaded guilty to conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The amount of cocaine the individuals were trying to purchase is now the relevant question, as Stacy Lanterman and Charles Roberts challenge their sentences. We affirm.

## I. Facts

The road to trouble began for the appellants in February 1991, when a confidential source introduced Agent Luster to Daniel Edge, whom police suspected was a purchaser and distributor of cocaine in Sangamon County, Illinois. Throughout the month, Edge and Luster negotiated the purchase and sale of various amounts of cocaine. One exchange occurred on March 7, 1991, when Edge sold one ounce of cocaine to Luster. Charles Roberts drove Edge to meet Luster on the night of that transaction.

Edge continued the relationship with Luster, and after asking him about a one kilogram transaction, asked Charles Roberts if he was interested in purchasing cocaine. On March 12, 1991, Edge met with Charles Roberts and discussed pooling money for the purchase of a kilogram of cocaine. Charles Roberts contacted Scott Roberts, and the two contributed $10,000 to purchase ten ounces of cocaine.[1] Edge next met with

---

1. Presentence reports indicate that the two unrelated Roberts had known each other since the summer of 1989 when they entered a drug partnership and obtained 2.5 kilograms of cocaine. The two ultimately had a falling out, but continued to obtain cocaine through separate distribution networks. In the transaction that led to their arrest, Charles Roberts invested $2,000 and Scott Roberts provided $8,000.

Stacy Lanterman to discuss his interest in purchasing a kilogram of cocaine. Lanterman had no money to invest, but had friends who did. Two days later, Lanterman called Edge to inform him that Michael Crain and Gregory Washburn would be providing $4,000 toward the kilogram purchase. In return for finding the investors, Lanterman wanted a one ounce finder's fee.

The fateful transaction occurred on the evening of March 14, 1991. Having pooled their resources, Edge and the other conspirators arrived at the motel where Agent Luster was waiting. Scott Roberts, Lanterman, Washburn, and Crain waited in automobiles in the motel parking lot. Edge, Crain and Charles Roberts entered the motel room and asked Luster to see a sample of the cocaine. Luster responded that he did not have the cocaine at the motel. While Luster went to get the cocaine, the three conspirators returned to the parking lot to get the money. When they returned, Roberts produced $10,000, Crain produced $4,000 and Edge produced $1,000. After the money was counted, all of the above individuals were arrested.

Immediately following the arrest, Edge began to cooperate with law enforcement officials by informing them of the contributions and expectations of the various conspirators. On December 6, 1993, all of the defendants, including Stacy Lanterman and Charles Roberts, pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine. In their respective plea agreements, both Lanterman and Roberts reserved the right to challenge the amount of cocaine attributable to them for sentencing purposes.

After a sentencing hearing at which both Lanterman and Charles Roberts declined to testify, the district court held both defendants accountable for the entire kilogram of cocaine. Under U.S.S.G. § 2D1.1, conspiracy to possess and distribute a kilogram of cocaine yields a base offense level of 26. The district court awarded both defendants a two point downward adjustment for acceptance of responsibility and a one point reduction for the timeliness of that acceptance. *See* U.S.S.G. § 3E1.1(a), § 3E1.1(b)(2). In addition, the district court gave Lanterman a two point reduction under U.S.S.G. § 3B1.2(b) for his minor role in the offense. The adjustments left Lanterman with an offense level of 21 and a criminal history in Category II, which yielded a sentencing range of 41 to 51 months. Charles Roberts' offense level of 23, and criminal history in Category III, yielded a sentencing range of 57 to 71 months. However, both defendants were subject to the mandatory minimum sentence of 60 months imprisonment. *See* U.S.S.G. § 5G1.1(b); 21 U.S.C. § 841(b)(1)(B). The district court sentenced Stacy Lanterman to 60 months imprisonment and four years of supervised release. Charles Roberts received 60 months imprisonment and five years of supervised release.

## II. Standard of Review

■ Lanterman and Roberts object to the amount of cocaine that the district court attributed to them for sentencing purposes. It is well-established in this circuit that at sentencing, the government must prove the quantity of drugs involved in a transaction by a preponderance of the evidence. *United States v. Vold*, 66 F.3d 915, 918 (7th Cir. 1995). Each conspirator is responsible for the amount of drugs he actually distributed, plus any additional amount reasonably foreseeable to him. *United States v. Pitz*, 2 F.3d 723, 727 (7th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994).

■ The district court's determination of the quantity of drugs involved in a transaction is a finding of fact which we review for clear error. *United States v. Ferguson*, 35 F.3d 327, 332–33 (7th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995). We will reverse a district court's determination of the drug quantity attributable to a defendant "only if after reviewing the record, we are left with the firm and definite conviction that a mistake has been made." *United States v. Corral–Ibarra*, 25 F.3d 430, 437 (7th Cir.1994).

■ While our review is deferential, a defendant has a due process right to be sentenced on the basis of reliable information. Although the district court may consider relevant information regardless of its admissibility under the rules of evidence ap-

plicable at trial, unreliable allegations *must not* be considered. When the facts contained in a presentence report "bear sufficient indicia of reliability to support their probable accuracy," the court may consider them in sentencing. *United States v. Salinas*, 62 F.3d 855, 859 (7th Cir.1995).

## III. Analysis

### A. *Stacy Lanterman*

 Lanterman's principal argument is that the district court erred in relying on the uncorroborated testimony of Daniel Edge in determining the amount of cocaine that was foreseeable to the conspirators. This argument misplaces the burden of producing evidence at sentencing. Once a defendant has challenged the facts contained in a presentence report, assuming the facts bear sufficient indicia of reliability, the defendant "must carry the burden of presenting some evidence beyond a mere denial calling the reliability or correctness of the alleged facts into question." *United States v. Coonce*, 961 F.2d 1268, 1280 (7th Cir.1992).

In this case, Lanterman did not testify at the sentencing hearing, nor did he present any evidence to substantiate his claim that he was merely an agent in a four ounce cocaine deal. Lanterman's presentence report clearly indicates that Edge visited him and invited him to participate in a one kilogram cocaine transaction. Moreover, Lanterman later called Edge to inform him that he had found other investors who wanted to participate. The district court found this information reliable, and consequently attributed the entire kilogram to Lanterman for the purpose of calculating his sentence. We see no reason to disturb that ruling.

### B. *Charles Roberts*

 Charles Roberts also contends that the district court erred in relying on his presentence report in calculating his base offense level. Like Lanterman, Roberts contends that the district court should not have relied on Edge's statements regarding the amount of cocaine attributable to him. As we already have stated, this argument misplaces Roberts' burden. When a defendant contests an allegation in the presentence report, he must come forward with evidence showing that the challenged fact is untrue. *United States v. Coonce*, 961 F.2d at 1279–80.

According to the presentence report, Edge contacted Charles Roberts about a one kilogram purchase. In addition, the presentence report refers to Roberts' conversation with law enforcement officials on the night of his arrest. This conversation confirms that Roberts knew the overall deal was for one kilogram. At sentencing, Roberts submitted an affidavit denying knowledge of the scope of the purchase, but a self-serving affidavit on this point is not enough. *See United States v. Westbrook*, 986 F.2d 180, 183 (7th Cir. 1993). Roberts could have testified at the sentencing hearing, thereby subjecting himself to cross-examination. Or, he could have subpoenaed the probation officer who prepared the presentence report, or any other witnesses who could challenge Edge's assertion that Roberts knew of the entire kilogram. He did none of these.

Finally, Roberts attempts to draw support from our decision in *United States v. Beler*, 20 F.3d 1428 (7th Cir.1994), where we vacated the defendant's sentence because the district court failed to reconcile vague and inconsistent estimates over the amounts of cocaine involved in a series of transactions that took place over a span of fifteen years. However, *Beler* is readily distinguishable. Here, by contrast, no inconsistencies exist because Roberts presented no evidence beyond his own affidavit. Accordingly, the district court properly overruled Roberts' objections.

## IV. Conclusion

The essence of both defendants' arguments is that the district court attributed more cocaine to them than to similarly situated co-defendants. Three defendants were held accountable for the entire kilogram: Daniel Edge, Stacy Lanterman, and Charles Roberts. Edge told law enforcement authorities that both Lanterman and Charles Roberts knew of the one kilogram purchase. The other conspirators also may have known, but there is no evidence of their knowledge. Consequently, Michael Crain, Gregory Wash-

162

burn, and Scott Roberts received lighter sentences. On the whole, this approach was well within the discretion afforded the district court, and is not clearly erroneous. *Vold,* 66 F.3d at 920.

The information upon which the district court relied in attributing one kilogram of cocaine to Stacy Lanterman and Charles Roberts was credible and, with the exception of Roberts' self-serving affidavit, uncontroverted. The decision of the district court therefore is

AFFIRMED.