**UNITED STATES of America, Appellee,**

v.

**Robert McMINN, Defendant, Appellant.**

**No. 96–1592.**

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1996.

Decided Jan. 13, 1997.

---

Matthew J. Lahey, with whom McLaughlin, Hemeon & Lahey, P.A., Laconia, NH, was on brief for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United

States Attorney, Concord, NH, was on brief for appellee.

Before TORRUELLA, Chief Judge, CYR * and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Appellant Robert McMinn mounts four challenges to the sentence imposed following his conviction on several felony counts relating to his acquisition, interstate transportation, and sale of stolen audio and video components. *See* 18 U.S.C. §§ 371, 2314 & 2315. As the sentence enhancement imposed pursuant to U.S.S.G. § 2B1.1(b)(4)(B) for engaging "in the business of receiving and selling stolen property" ("ITB" enhancement) constituted error, we vacate the district court judgment and remand for resentencing.

# I

## *DISCUSSION*

### A. *Upward Departure (U.S.S.G. § 4A1.3)*

■ The district court granted the government's motion for an upward departure under U.S.S.G. § 4A1.3 (1995), from a Total Offense Level ("TOL") of 18 and a Criminal History Category ("CHC") of III, to TOL 20 and CHC VI, on the ground that CHC III would have underrepresented the seriousness of McMinn's prior criminal conduct and the likelihood of recidivism. McMinn contends that the three affidavits relied upon by the district court for its departure-related findings were not reliable.[1]

First, the district court did not place principal reliance on the challenged affidavits for its factual findings relating to the seriousness of McMinn's prior criminal conduct.[2] Moreover, though McMinn claims that the affidavits were uncorroborated, and the affiants

untrustworthy, he chose not to cross-examine one of the affiants at sentencing. In addition, he had cross-examined the other two affiants at the earlier trial on drug-conspiracy charges before the same judge. *See supra* note 1. Finally, the district court was presented with *unchallenged* police reports, describing various burglaries and corroborating other information in the affidavits. *See United States v. Shrader*, 56 F.3d 288, 294 (1st Cir.1995). There was no clear error.

### B. *Obstruction of Justice Enhancement (U.S.S.G. § 3C1.1)*

■ Second, McMinn challenges a two-level enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, based on threatening letters he sent in February, April and October of 1995 to Steven Serfass, a prospective government witness. McMinn argues that Serfass was not connected with the investigation, prosecution, or sentencing of the "instant" offenses involving interstate transportation, receipt, and sale of stolen audio and video components, since Serfass neither testified, nor were the threatening letters admitted, at the trial on these charges. Instead, Serfass testified at an earlier trial on drug charges which were severed from the stolen-property charges on June 20, 1995. As the enhancement for obstruction of justice under U.S.S.G. § 3C1.1 applies only to obstructing an "investigation, prosecution, or sentencing of the *instant* offense," McMinn claims that the district court erred as a matter of law in concluding that conduct unconnected with the stolen-property charges could support the enhancement. We find *no error*.

At the time McMinn mailed the threatening letters, Serfass remained a prospective government witness in relation to the "in-

---

* Cyr, J., was not present at oral argument.

1. We review factual findings for clear error, *see United States v. Shrader*, 56 F.3d 288, 292 (1st Cir.1995), mindful that the sentencing court is vested with "wide discretion" to determine whether sentencing information is reliable. *Id.* at 294.

2. Rather, the upward departure decision was based upon the following considerations as well: (1) five felony drug convictions entered June 13, 1989, and six convictions based on criminal conduct occurring between 1990 and 1994,

which were not taken into account in calculating the CHC;

(2) an uncharged burglary;

(3) an uncharged conspiracy to distribute large quantities of marijuana between 1987 and 1995; and, finally,

(4) the fact that McMinn was on bail when he committed the stolen-property offense, and had also violated parole and committed various other infractions, including drug use, while incarcerated.

stant offense"; *i.e.*, the stolen-property charges. It was not until January 1996, immediately prior to the trial on the stolen-property charges, that it became clear that Serfass would not testify. Thus, there was no error in the district court's determination that McMinn attempted to obstruct the prosecution of the stolen-property charges by mailing the threatening letters.

## C. *ITB Enhancement (U.S.S.G. § 2B1.1(b)(4)(B)(1995))*

Third, McMinn contends that the district court erred in imposing a four-level ITB enhancement under U.S.S.G. § 2B1.1(b)(4)(B) (1995). Relying primarily on *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir.1990), he argues that an ITB enhancement is impermissible unless the defendant was in the business of *receiving and* selling property stolen by *others* (i.e., in the business of "fencing" stolen property). The district court ruling that McMinn's criminal conduct came within the ITB enhancement guideline is reviewed *de novo*. *See United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992).

The four-level ITB enhancement guideline, by its express terms, applies only if "the offense involved receiving stolen property, and the defendant was a person *in the business of receiving and* selling stolen property." U.S.S.G. § 2B1.1(b)(4)(B) (emphasis added). Thus, on its face at least, the ITB guideline does not apply to a defendant who makes a business of stealing property; that is, a professional "thief," as distinguished from a professional fence. *See Braslawsky*, 913 F.2d at 468 (holding that, by its terms, the ITB enhancement does not apply to a professional thief).

Under the common-law tradition, stealing property from another normally does not equate with "receiving" property from its rightful owner. *See Milanovich v. United States*, 365 U.S. 551, 558, 81 S.Ct. 728, 732, 5 L.Ed.2d 773 (1961) (Frankfurter, J., dissenting) ("a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen[,] . . . for the commonsensical, if not obvious, reason that a man who takes property does

not at the same time give himself the property he has taken.") (citations omitted); *Baugh v. United States*, 540 F.2d 1245, 1246 (4th Cir.1976) ("logic . . . instructs us that there is an inherent inconsistency in treating a taking as a receipt"); *see also United States v. Trzcinski*, 553 F.2d 851, 853 (3d Cir.1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977). Therefore, statutes which criminalize "receiving" are generally not thought to target the thief himself, but the wrongdoer who knowingly acquires the loot from or through the thief. *See, e.g., Milanovich*, 365 U.S. at 552–56, 81 S.Ct. at 729–730; *Heflin v. United States*, 358 U.S. 415, 419–20, 79 S.Ct. 451, 453–54, 3 L.Ed.2d 407 (1959); *United States v. Washington*, 861 F.2d 350, 352 (2d Cir.1988). Thus, a fair reading of the plain language employed in section 2B1.1(b)(4)(B) strongly suggests that a defendant engaged in selling only the property he is responsible for stealing has not "received" it in the sense contemplated by the Sentencing Commission.

Should there be any doubt about the plain language, the parallel development of the sentencing guideline governing thefts of property, *see* U.S.S.G. § 2B1.1, and the guideline on receiving stolen property, *see id.* § 2B1.2, together with the evolution of the language employed in the ITB enhancement guideline itself, *see id.* § 2B1.1(b)(4)(B), tend to confirm that the Commission envisioned that "theft" alone not constitute a "receiving" of stolen property for these purposes. Under the original Sentencing Guidelines, U.S.S.G. § 2B1.1 (1987) governed "Larceny, Embezzlement and Other Forms of Theft," whereas U.S.S.G. § 2B1.2 (1987) governed "Receiving Stolen Property." The offense of receiving stolen property was subject to an ITB enhancement, *see* U.S.S.G. § 2B1.2(b)(2)(A) (1987) ("If *the offense* [i.e. receiving stolen property] was committed by a person *in the business of selling stolen property,* increase by 4 levels.") (emphasis added), which clearly applied to the professional fence and not to a defendant who simply sold property he pilfered. *See id.* § 2B1.2, comment (backg'd) (1987) ("Persons who *receive* stolen property for *resale* receive a sentence enhancement . . . .") (emphasis

added);[3] *Braslawsky,* 913 F.2d at 468. The guideline governing theft crimes included no corresponding ITB enhancement. *See* U.S.S.G. § 2B1.1 (1987).

The disjunctive treatment required under these two guideline sections clearly implied that the Commission did not intend that the ITB enhancement apply to defendants responsible only for the theft of the ill-gotten property and not its "resale." *See supra* note 3. At the time the Sentencing Guidelines were promulgated, the Commission consistently demonstrated its intention that like enhancements be applicable to both "theft" and "receipt" offenses by including a parallel enhancement provision in *each* guideline. *See id.* §§ 2B1.1(b)(2); 2B1.2(b)(3) (1987) (parallel enhancements relating to stealing and receiving (stolen) firearm, destructive device or controlled substance); *id.* §§ 2B1.1(b)(4); 2B1.2(b)(2)(B) (1987) (parallel enhancements for more than minimal planning relating to stealing and receiving (stolen) property); *id.* §§ 2B1.1(b)(6); 2B1.2(b)(4) (1987) (parallel enhancements for engaging in organized criminal activity relating to stealing and receiving (stolen) property); *see also* U.S.S.G.App. C, amend. 117 (effective Nov. 1, 1989) (adding ITB enhancement to U.S.S.G. § 2B6.1—trafficking in motor vehicles with altered or obliterated identification numbers—"to resolve an inconsistency between . . . section [2B6.1] and § 2B1.2").

The subsequent evolution of the ITB enhancement guideline likewise substantiates that it was meant to cover the professional fence, not the thief. As the Commission broadened the scope of U.S.S.G. § 2B1.2 ("Receiving Stolen Property"), the language in the ITB enhancement itself was amended to retain its narrow focus upon defendants who "fence" stolen goods. The "Receiving Stolen Property" guideline was amended in 1989 to cover "Transporting, Transferring, Transmitting, or Possessing Stolen Property." U.S.S.G. § 2B1.2, *as amended by* amend. 102 (effective Nov. 1, 1989). Under the same amendment, the ITB enhancement guideline was changed to read, "[i]f the offense was committed by a person in the business of *receiving and* selling stolen property, increase by 4 levels." *Id.* § 2B1.2(b)(3)(A) (1989) (emphasis added to amendatory language). Thus, it is apparent from the context that the words "receiving and" were included so as to restrict application of the ITB enhancement to defendants who *receive and* sell stolen property (i.e. professional fences) and to exclude from its reach others, including the thief, who transport, transfer, transmit, or possess, and then sell, stolen property.

In 1993, the separate guideline provisions governing theft offenses and the receiving of stolen property were consolidated. *See* U.S.S.G. § 2B1.1 *as amended by* amend. 481 (effective Nov. 1, 1993). The same 1993 amendment introduced the language currently found in the ITB enhancement guideline, prescribing a four-level enhancement·"[i]f *the offense involved receiving stolen property,* and the defendant was a person in the business of receiving and selling stolen property." *Id.* § 2B1.1(b)(5)(A) (1993) (emphasis added to amendatory language).

The historical context in which the 1993 amendment was adopted thus demonstrates

---

**3.** The Commission's choice of the word "resale" vividly suggests a prior sale (by the thief to the fence) conspicuously lacking between the rightful owner and the thief. Thus, the commentary provides authoritative definition to the scope of the original ITB enhancement. *See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) (". . . commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). The background commentary to U.S.S.G. § 2B1.2 was deleted at the time U.S.S.G. § 2B1.2 was consolidated into U.S.S.G. § 2B1.1. *See* U.S.S.G. § 2B1.1, *as amended by* amendment 481 (effective Nov. 1, 1993). But though there is no longer any commentary on the ITB enhancement, *see United States v. Richardson,* 14 F.3d 666, 674 (1st Cir.1994), neither is there any reason to believe that consolidation of the two original guideline sections, and the consequent deletion of the background commentary, was meant to alter the scope of the ITB enhancement. Rather, along with the consolidation and deletion of 24 other guideline sections, the Commission consolidated § 2B1.2 with § 2B1.1 because the offenses were closely related and the Commission wanted to simplify the Guidelines Manual. *See* U.S.S.G.App. C, amend. 481 (1995).

that the reconstructed ITB enhancement was designed to apply only to defendants who "received" stolen property and whose offense of conviction would come within the scope of former U.S.S.G. § 2B1.2 ("Receiving Stolen Property"), as opposed to defendants who pilfered the property and whose offense of conviction therefore came within the scope of the original version of U.S.S.G. § 2B1.1. It seems reasonably clear, therefore, viewed in an historical perspective, that the words "receiving and" were added to preserve the limited reach of the ITB enhancement.

On the other hand, the interpretation propounded by the government presumes that the Commission twice amended the ITB enhancement so as to make it applicable only to defendants who "receive" stolen property, yet intended the term "receiving" to mean merely "taking possession of," thereby encompassing simple theft. Though as a literal matter, without regard to its historical context, the term "receiving" does not necessarily exclude "theft," we conclude that the references to defendants who "receive and sell" stolen property were not meant to apply to a defendant who simply sells only property he has stolen.

■ Our construction is guided by conventional interpretive principles. *See United States v. DeLuca*, 17 F.3d 6, 10 (1st Cir.1994) (applying customary rules of statutory interpretation to sentencing guidelines). It avoids interpreting the words "receiving and" out of the ITB enhancement guideline as surplusage. *See United States v. Campos–Serrano*, 404 U.S. 293, 301 n. 14, 92 S.Ct. 471, 476 n. 14, 30 L.Ed.2d 457 (1971) ("A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Whereas, were we to adopt the government's view—that the language in the current ITB enhancement ("in the business of receiving and selling stolen property") reaches both the thief and the professional fence—then the language of the

original ITB enhancement ("in the business ... of selling stolen property") need never have been amended in 1989.

Our interpretation comports with basic guideline sentencing policy as well. *See* 18 U.S.C. § 3553(a)(1),(2)(A),(B),(C) & (5). The services of a professional fence undoubtedly facilitate the ready, advantageous disposition of property stolen by the less well-situated thief, thereby providing a significant inducement to commit theft offenses. *See United States v. Sutton*, 77 F.3d 91, 94 (5th Cir. 1996); *Braslawsky*, 913 F.2d at 468; *United States v. Bolin*, 423 F.2d 834, 838 (9th Cir.), *cert. denied*, 398 U.S. 954, 90 S.Ct. 1882, 26 L.Ed.2d 297 (1970); Carl Klockars, *The Professional Fence* 144 (1974) (discussing the adage, "if there were no receivers, there would be no thieves"). It is reasonable to assume, as a general rule, that a professional fencing operation efficiently can dispose of greater quantities of stolen goods than could the individual thieves who supply the professional fence, *see* Klockars at 69–135, thereby enabling both the thieves and the fence to realize greater returns. *Cf. Braslawsky*, 913 F.2d at 468. Thus, as a rule professional fences may be expected to induce more stealing.

Furthermore, the interposition of a sophisticated fencing operation between the thief and the ultimate purchaser of the stolen property may confound or obstruct the investigation and prosecution of theft offenses. Often, the stolen property itself may be the only tangible evidence connecting the thief to the crime. Since the professional fence is better positioned to move stolen goods quickly into the hands of the ultimate "black market" consumer, *see* Klockars at 77 n. 2, 106–13, the loot is more likely to be dispersed before law enforcement agencies can respond. Consequently, the fence not only affords the thief a less risky and more efficient alternative for disposing of the booty, but the increased efficiency comes at the expense of effective law enforcement.[4]

---

4. These considerations represent an especially serious hindrance to law enforcement when the professional fence utilizes a legitimate "front," such as a pawn shop or an outlet dealing in distressed goods at sharply lower prices. *See*

*United States v. Robinson*, 698 F.2d 448, 453 (D.C.Cir.1983); Klockars at 69–135. The "front" may afford a superficially valid justification for the low sale prices (*i.e.* the goods were pawned to the "front" or acquired as distressed

The government argues, nonetheless, that the ITB enhancement guideline should be construed simply to require proof that McMinn's sales of stolen goods had a certain regularity or sophistication. *Cf. St. Cyr,* 977 F.2d at 703 (adopting a "totality of the circumstances" test). For the reasons stated above, we reject the government's interpretation as less consistent with the language, history, and purpose of the ITB enhancement guideline.[5]

We think it important to point out that our opinion in *St. Cyr* does not support the position advocated by the government. *St. Cyr* neither expressed nor implied disapproval of the basic proposition that the ITB enhancement guideline should apply only to "professional fences." *See id.* at 703 ("We think this assessment fits harmoniously ... with the decisions of those few circuit courts that have addressed the meaning of [the ITB guideline]."). Rather, the *St. Cyr* panel observed that a "professional fence" test is not particularly helpful. *Id.* at 702–03 ("Defining the term 'professional fence' is as chancy as defining the language of the guideline itself."). Although the "totality of the circumstances" test announced in *St. Cyr* did define the term "in the business," the court never reached the question squarely presented here; *viz.,* whether a defendant need have been in the business of *"receiving and* selling" stolen property (*i.e.* acting as a fence) in order for the ITB enhancement to apply. *See also United States v. Richardson,* 14 F.3d 666, 675 (1st Cir.1994) ("evidence ... clearly demonstrates that defendant was a fence"); *cf. United States v. Tutiven,* 40 F.3d 1, 8 (1st Cir.1994) ("As it was stipulated that Tutiven did not steal the motor vehicles ... logic pretty much compels the conclusion that Tutiven knowingly 'received stolen property.'"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1391, 131 L.Ed.2d 243 (1995).

The government in our case points to substantial evidence that McMinn engaged not only in extensive thievery but in storing and disseminating stolen property as well. Nothing prevents a professional thief from also conducting a fencing operation of sufficient size and continuity to qualify for the ITB enhancement; criminals, too, may have more than one line of business. For the reasons we have already indicated, however, a thief would not qualify for the ITB enhancement if the only goods he distributed were those which he had stolen.

There is nothing in the government's analysis or in the district court's findings to indicate that McMinn sold property which he had not stolen. Of course, since reasonable inferences are always permitted, the case might be quite different if the only evidence were that McMinn had stored and sold large quantities of stolen property. Here, however, the evidence revealed that McMinn had stolen a great deal of property and, as the record now stands, we have no basis to suppose that he did not steal it all.

Finally, the government argues in the alternative that McMinn should be treated as a professional fence because he neither proffered evidence, nor admitted, that he had pilfered all the stolen goods he sold. Since it is the government's burden to prove that McMinn received and sold goods stolen by others, however, its argument is fundamentally flawed. *See St. Cyr,* 977 F.2d at 702 ("the government bears the burden of establishing that the ITB enhancement applies in a given case").[6]

## II

### CONCLUSION

For the foregoing reasons, the district court judgment is vacated and the case is

---

goods) and thus serve to impede an inference that the fence knew the goods were stolen.

5. Nor is the caselaw in other circuits inconsistent with the requirement that the defendant must be a "fence" in order for the ITB enhancement to apply. *See, e.g., Sutton,* 77 F.3d at 94; *United States v. Zuniga,* 66 F.3d 225, 229 (9th Cir.1995); *United States v. Warshawsky,* 20 F.3d 204, 214–15 (6th Cir.1994); *United States v. King,* 21 F.3d

1302, 1303 n. 2 (3d Cir.1994); *United States v. Esquivel,* 919 F.2d 957, 959 (5th Cir.1990); *see also St. Cyr,* 977 F.2d at 703.

6. As the ITB enhancement is inapplicable to McMinn, it is unnecessary to resolve the "double counting" claim; that is, whether it was appropriate to consider the same criminal conduct in determining the upward departure *and* the ITB enhancement.

remanded for resentencing consistent with this opinion.