UNITED STATES of America, Appellee,

v.

Charles E. BREWSTER, Defendant,
Appellant.

No. 97–1448.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1997.

Decided Oct. 2, 1997.

Henry W. Griffin, by appointment of the court, for defendant, appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and Donald E. Clark, Assistant United States Attorney, were on brief, for appellee.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

SELYA, Circuit Judge.

In this sentencing appeal, defendant-appellant Charles E. Brewster protests an upward departure that the district court premised in large measure on prior, uncharged criminal conduct—a history of persistent and vicious

domestic violence—dissimilar to the offenses of conviction (being a felon in possession of a firearm and making false statements in connection with the procurement of firearms). We affirm the sentence.

## I.  HOW THE CHARGES AROSE

We distill the facts from the plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. *See United States v. Talladino,* 38 F.3d 1255, 1258 (1st Cir.1994); *United States v. Dietz,* 950 F.2d 50, 51 (1st Cir.1991).

In August 1996, police officers responded to a report of domestic violence at the abode shared by the appellant and his wife in Livermore Falls, Maine. The officers observed Mrs. Brewster's injuries, tried to calm the couple's three children (ages 10, 11 and 16), took statements from both Mrs. Brewster and her sister-in-law, and arrested the appellant. While being transported to the county jail, Brewster spoke volubly about his ardor for hunting and described the firearms (a 30–30 rifle and 16–gauge shotgun) that he owned and kept in his house. When a routine criminal record check disclosed a prior felony conviction for armed robbery, the police repaired to the house and, with Mrs. Brewster's consent, seized the two weapons. Further investigation revealed that the appellant had purchased two other rifles without disclosing his status as a convicted felon. Meanwhile, Mrs. Brewster obtained a state court "protection from abuse" order, and state authorities released Brewster on bail, conditioned upon his refraining from all contact with his wife. The appellant promptly violated this restriction.

In September 1996, a federal grand jury returned an indictment charging the appellant with one count of making false statements on a firearm application form in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2) (1994), and two counts of being a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (1994). In due course, the appellant pleaded guilty to all three counts.

## II.  HOW THE SENTENCE DERIVED

The district judge pondered several pieces of evidence at the disposition hearing. Among these was a handwritten statement appended to the PSI Report, in which the appellant admitted to purchasing guns knowing that he was legally forbidden from doing so. In a second handwritten statement, also appended to the PSI Report, Mrs. Brewster chronicled 17 years of horrific domestic abuse. She explained that sheer terror had forestalled any contact with the authorities before August of 1996: she feared not only for her life, but also for what might happen to her children if she were slaughtered. Her fear of bodily harm stemmed from her husband's repeated minations during years and years of physical abuse. She described incidents in which the appellant threw her on the floor and stomped on her cranium with heavy work boots, banged her head against a counter, threw knives at her, and at various times smothered, kicked, punched, bit, and strangled her. In addition, she had been threatened "with every kind of brutal death possible." [1]

The appellant made little effort to conceal his abusive behavior. In recorded interviews with the state police, several neighbors and friends described incidents involving physical violence and vulgar language, and reported that they had heard the appellant threaten to kill his wife on several occasions.

After making an upward adjustment for multiple weapons, U.S.S.G. § 2K2.1(b)(1)(A), and a downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1, Judge Carter settled upon an offense level (OL) of 18. He then assessed criminal history points for an armed robbery conviction and a break-

---

1. A brief excerpt illustrates the tone and tenor of the statement:

> [My husband] has tried to drowned [sic] me in the pool and in the bath tub. On several occasions I thought I was going to die before he let me up.... He's told me he would slice my throat while I slept. He has put knifes [sic]

against my throat and pressed them into my neck, laughing while he did it. He has sawed my kitchen set up with a power saw because I cooked the 'wrong thing' for supper and tried to pull me outside to 'cut my hands off.' I hid in the woods for hours that night, but had to go back for my son.

ing and entering conviction but overlooked seven other convictions because of their age or the unavailability of records. The resultant point score placed Brewster in criminal history category (CHC) III. This matrix (OL 18; CHC III) yielded a guideline sentencing range (GSR) of 33 to 41 months.

The government urged the court to depart upward on the ground that Brewster's CHC underrepresented the gravity of his past criminality and the corresponding risk of recidivism. The appellant objected. The ensuing debate centered around U.S.S.G. § 4A1.3 (1995), pertinent portions of which are reproduced in the Appendix. Judge Carter expressed concern about whether section 4A1.3's language and structure permitted a departure based on spousal abuse, especially since that abuse—which he considered relevant but not similar to the offense of conviction—had never been adjudicated as criminal conduct. In the last analysis, however, the judge opined that the case qualified for a departure because of the 17–year history of unrelieved domestic violence and the existence of seven prior convictions for serious crimes that had not been counted in arriving at the CHC. The judge then mentioned a third factor, declaring that the appellant's refusal effectively to pursue an alcohol abuse program or to undertake domestic abuse counseling "[a]dd[ed] to all of this in terms of the unusual character of this case."

Turning to the matter of degree, the court determined that the upward departure should be fashioned by simulating an increase from CHC III to CHC V. The court stressed that a sentence at the upper limit of the simulated GSR (51–63 months) would produce a prison term of approximately five years, which, when followed by the maximum available term of supervised release (three years), would keep the appellant away from his wife until their youngest child had reached age 18. At that time, the court reasoned, Mrs. Brewster would no longer be "held hostage" in an abusive situation by her concern for her children. The court added that a sentence of that magnitude was "appropriate in recognizing the serious nature of this prior criminal conduct as related conduct to the offense conduct of possession of the firearm."

When all was said and done, the court sentenced the appellant to serve an incarcerative term of 63 months, followed by a three-year term of supervised release (the conditions of which, among other things, proscribed any contact or communication with his wife absent written permission from the court). This appeal followed.

## III. THE STANDARD OF REVIEW

■ We review departures for abuse of discretion. *See Koon v. United States*, —— U.S. ——, —— – ——, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996). In the process, we must determine three things: whether the articulated ground for departure is conceptually appropriate, whether the record provides sufficient factual support for a finding that the ground exists, and whether the degree of departure is reasonable. *See United States v. Dethlefs*, 123 F.3d 39, 43 (1st Cir.1997).

For organizational purposes, we compress the departure inquiry in this case by examining the legal and factual sufficiency of the departure grounds in tandem. Only then do we inquire into the degree of departure.

## IV. THE GROUNDS FOR DEPARTURE

The court below departed because it determined that the appellant's CHC significantly underrepresented his proclivity to commit future crimes and the seriousness of his criminal past in two ways: first, CHC III failed adequately to reflect the gravity and duration of his vicious, assaultive interspousal behavior; and second, CHC III failed adequately to reflect the cumulative impact of seven prior convictions that yielded no criminal history points. We discuss these factors *seriatim.* We then discuss the court's allusion to the appellant's failure effectively to pursue a treatment program for domestic violence or alcohol abuse.

### A. *Domestic Abuse as a Ground for Departure.*

■ The guideline that the district court invoked, U.S.S.G. § 4A1.3, permits a depar-

ture if reliable information indicates that the CHC "significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." The guideline's text relates that such information "may include, *but is not limited to* " the type illustrated in a series of five vignettes. *Id.* (emphasis supplied). The first four examples address charged or adjudicated criminal conduct, and the fifth addresses conduct which, although unadjudicated (and perhaps uncharged), is similar to the offense of conviction.

In contrast to these examples, the court below predicated the instant departure principally on Brewster's 17–year history of unadjudicated, uncharged domestic abuse, which it termed "the most appalling part of this man's record." Judge Carter recognized that none of the illustrations contained in section 4A1.3 applied to this misconduct, as the appellant had never been charged with, or convicted of, abusive behavior, and this prior misconduct bore no similarity to the offenses of conviction. But the judge looked to the guideline's introductory language and concluded that Brewster's pervasive domestic abuse "amply demonstrated" the likelihood that he will commit future crimes. Brewster attacks this finding on three fronts. He maintains that the domestic abuse, in and of itself, is not a legally permissible ground for departure under section 4A1.3; that it is not a relevant consideration here; and that, in all events, the evidence of domestic violence relied upon by the sentencing court possessed too few hallmarks of trustworthiness. None of these arguments is convincing.[2]

**1.**

■ Emphasizing the Sentencing Commission's express invitation to consider "prior *similar* adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(e) (emphasis supplied), the appellant posits that

the guideline by negative implication forbids the use of dissimilar, uncharged conduct as a basis for departure. We do not agree.

In our judgment, the determination of whether prior criminal conduct that is both uncharged and dissimilar can ever form a basis for a criminal history departure is neither dictated nor informed by the language of section 4A1.3(e). After all, that section states explicitly that the list of five illustrations is not intended to be exhaustive. What is more, to infer that the guideline's explicit authorization to consider similar misconduct as a basis for departure precludes any consideration of dissimilar misconduct for that purpose not only would frustrate the "included, but not limited to" caveat that the Sentencing Commission deliberately inserted in the text of section 4A1.3, but also would run counter to a fundamental principle of departure jurisprudence: that, in the absence of an explicit proscription, courts generally should not reject categorically any factor as a potential departure predicate. *See Koon,* at ——, 116 S.Ct. at 2051; *Dethlefs,* 123 F.3d at 46; *see also* U.S.S.G. Ch.1, Pt. A., intro. comment. 4(b) (stating that the Sentencing Commission did not intend "to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case"). Finally, construing section 4A1.3 to mean what it says comports with the Commission's emphasis on a case-by-case approach to section 4A1.3 departures, *see* U.S.S.G. § 4A1.3, comment. (backg'd.) ("This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.").

For these reasons, we rebuffed a kindred argument in *United States v. Doe,* 18 F.3d 41 (1st Cir.1994). The defendant there, convicted of being a felon in possession of a firearm, focused on statements in the commentary to U.S.S.G. § 4A1.2 that open the door for sen-

---

**2.** Given the sentencing court's factual findings, we are inclined to believe that there is force behind the government's argument that the prolonged domestic violence which marred the Brewsters' marriage would have allowed the court to depart upward under U.S.S.G. § 5K2.0 (permitting departure if the court finds an aggravating circumstance of a kind, or to a degree, not

adequately taken into consideration by the sentencing guidelines that renders the case meaningfully atypical). *See, e.g., United States v. Keester,* 70 F.3d 1026, 1027–28 (8th Cir.1995) (per curiam) (upholding such a departure). Because we sustain the upward departure under section 4A1.3, *see* text *infra,* we need not resolve this question definitively.

tencing courts to use outdated juvenile crimes similar to the offense of conviction as a departure predicate. *See id.* at 45–46. Drawing a negative inference from that language, Doe argued that the court could not use his uncounted, outdated, *dissimilar* juvenile crimes as a springboard for departure. *See id.* We rejected this argument, noting both that it contravened the Sentencing Commission's express intention not to limit gratuitously the kinds of factors that could constitute grounds for departure in a sufficiently atypical case, and that the guideline commentary provided no explicit instruction as to the use of uncounted dissimilar juvenile misconduct. *See id.* at 46.

Both observations are apropos here. Moreover, the fundamental lesson to be derived from *Doe* is "that a court should not infer from inexplicit Guidelines language, or from language that authorizes use of a particular factor as a basis for departure in *some* cases, an *absolute* barrier in principle against using certain other factors as grounds for departure in *other unusual* circumstances." *Id.* at 47. We find that lesson to be instructive in the circumstances at hand.

Considerations of consistency also conduce to following *Doe*'s lead. The guidelines, while not specifically addressing the use of uncharged, dissimilar conduct as a factor in section 4A1.3 departures, explicitly provide that the touchstone of any such departure determination is "that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3, p.s. Because the initial CHC determination appraises a defendant's history of deviant behavior without regard to whether his past crimes are similar in nature to the offense of conviction, we see no reason to insist that courts take an artificially narrow view and assess the CHC's adequacy through a lens that filters out prior misconduct which is dissimilar in nature to the offense of conviction, as long as that conduct, alone or in combination with other known data, involves or portends serious criminal behavior.

On this issue, all roads lead to Rome. Accordingly, we hold that, in an appropriate case, a criminal history departure can be based upon prior dissimilar conduct that was neither charged nor the subject of a conviction.[3] In so holding, we align ourselves with the Seventh Circuit, *see United States v. Schweihs,* 971 F.2d 1302, 1319 (7th Cir.1992), and note our respectful disagreement with the Second Circuit, *see United States v. Chunza–Plazas,* 45 F.3d 51, 56 (2d Cir.1995) (vacating an upward departure based on dissimilar criminal conduct that had not resulted in conviction and holding that "a court might properly consider that conduct [under section 4A1.3(e) ] only if it is 'similar' to the crime of conviction").

### 2.

■ The appellant contends, in the alternative, that the imposed sentence must be vacated because the court rested its appraisal of his past sociopathy upon information that lacked trustworthiness and did not credibly show that the conduct was meaningfully atypical. This contention is without merit.

■ We begin with bedrock. Traditional rules of evidence do not pertain in the sentencing phase, *see United States v. Gonzalez–Vazquez,* 34 F.3d 19, 25 (1st Cir.1994), and trial courts exercise wide discretion in deciding what information is sufficiently dependable to rely upon, *see United States v. Tardiff,* 969 F.2d 1283, 1287 (1st Cir.1992). Despite this latitude, the information upon which a sentencing determination is based must possess "sufficient indicia of reliability

---

**3.** To be sure, we should approach "dissimilar conduct" departures, like all other departures, with great circumspection. Our holding will have force only in instances in which the uncharged, dissimilar conduct is so serious that, unless it is factored into the sentencing calculus, the resultant CHC will be manifestly deficient as a measure of the defendant's past criminality and/or likely recidivism. Moreover, we anticipate that we will encounter relatively few defendants who have substantial records of serious, dissimilar criminal conduct that has never been brought to contemporaneous official attention. Indeed, such cases may be limited to those types of misconduct, such as domestic abuse, in which the very nature of the criminal behavior itself explains the absence of previous charges and convictions.

to support its probable accuracy." U.S.S.G. § 6A1.3, p.s.

Reliability is a flexible, case-specific standard in the sentencing context, but it always is informed by considerations of due process and experiential knowledge. *See United States v. Lanterman*, 76 F.3d 158, 160–161 (7th Cir.1996); *Tardiff*, 969 F.2d at 1287. Within those wide parameters, sentencing courts may elect to embrace divers kinds of information, even hearsay evidence that has never been subjected to cross-examination. *See Tardiff*, 969 F.2d at 1287; *United States v. Zuleta–Alvarez*, 922 F.2d 33, 36 (1st Cir. 1990). Moreover, factual averments contained in the PSI Report usually are deemed reliable enough to be used for sentencing purposes. *See Gonzalez–Vazquez*, 34 F.3d at 25; *United States v. Morillo*, 8 F.3d 864, 872 (1st Cir.1993) (collecting cases).

Here, the sentencing court relied on Mrs. Brewster's notarized statement as the principal basis for its findings anent the history of domestic abuse. In our view, the judge's determination that this statement accurately portrayed the salient events is unimpugnable. We explain briefly.

In the first place, Mrs. Brewster's statement was authored subject to the penalties of perjury. In the second place, the appellant virtually conceded the statement's accuracy below,[4] and failed to dispute the statement's contents in the face of the district judge's explicit warning that, if accepted as true, the statement would form part of the foundation upon which the judge would decide what sentence should be levied. Although the government must carry the devoir of persuasion in regard to facts supporting an upward departure and the accused has no obligation to offer oppugnant evidence, Brewster's refusal to disavow the government's accusa-tions when given the opportunity to do so can itself be viewed as an indicium of the proffered information's trustworthiness. *See United States v. Figaro*, 935 F.2d 4, 8 (1st Cir.1991). This inference is especially compelling where, as here, the defendant also declines the court's invitation to cross-examine the declarant at the disposition hearing. *See United States v. Shrader*, 56 F.3d 288, 295 (1st Cir.1995).

Finally, a number of the allegations contained in Mrs. Brewster's statement were corroborated by other information, such as the PSI Report's description of the domestic violence incident from which the federal charges arose, the original police report, the state police interview transcripts, and the issuance of the state court protection order. Such independent corroboration is a prime indicator of reliability in the sentencing milieu. *See United States v. Ponce*, 51 F.3d 820, 828 (9th Cir.1995).

We need not tarry. On this record, it strains credulity to characterize Mrs. Brewster's account as unreliable.[5] Hence, the district court did not err in accepting—and acting upon—the information contained in the statement. *See, e.g., Shrader*, 56 F.3d at 294; *Tardiff*, 969 F.2d at 1287; *Figaro*, 935 F.2d at 7.

Before leaving the topic of factual sufficiency, we pause to discuss two related points. One concerns the question of relevancy. The appellant hints that, even if the record reliably reflects a pattern of domestic abuse, that pattern is not a fair predictor of future criminality along the lines of the offense of conviction. This suggestion, however, is no more than a recasting of the argument that prior *dissimilar* conduct cannot form the fundament for a section 4A1.3 de-

---

4. The following colloquy occurred during the disposition hearing:

   THE COURT: Is there any respect in which you believe that anything contained in the [PSI] report or its appendices [i.e., Mrs. Brewster's statement] as I have just described them which [sic] is inaccurate or untrue?
   DEFENDANT: No, sir.

5. Brewster's reliability argument leans heavily on our opinion in *United States v. McMinn*, 103 F.3d 216 (1st Cir.1997). *McMinn*, fairly read, will not bear the weight that Brewster loads upon it. In that case, we rejected a reliability challenge and upheld a section 4A1.3 departure based in part on witness statements attesting to the seriousness of the defendant's prior criminal conduct. *See id.* at 218. Brewster's argument suggests that, were it not for certain differences between the *McMinn* statements and those in issue here, the *McMinn* court would have disallowed the upward departure. This is unfounded conjecture, premised primarily on wishful thinking.

parture, and we dismiss it on that basis. Section 4A1.3 permits a departure as long as the uncounted conduct evidences a general propensity to commit "other" or "further" crimes. Brewster's pervasive history of domestic violence undoubtedly presages the probability that he will continue to engage in such offensive behavior.

We add, moreover, that there is indeed a nexus in this case between Brewster's history of spousal abuse and his felon-in-possession offense. As Judge Carter pointed out, the discovery of the offense conduct arose directly from an incident of domestic violence, and, although the record contains no inkling that Brewster used the guns to menace his wife, we cannot fault the district judge's conclusion that the presence of guns in the home was "a reasonable source of sufficient fear" to discourage Mrs. Brewster from seeking outside assistance in an effort to end the unremitting abuse.

Finally, we must ask whether the appellant's immersion in domestic violence was sufficiently striking to distinguish him from the mine-run of offenders in CHC III, thereby warranting an upward departure. *See United States v. Carrillo–Alvarez*, 3 F.3d 316, 320 (9th Cir.1993). The district court described the thoroughly despicable chronicle of physical, verbal, and emotional abuse as "highly unusual." We believe that the accuracy of that characterization is self-evident and that the atypicality requirement of section 4A1.3 is easily fulfilled. Phrased another way, since the appellant's placement in CHC III did not compensate at all for this markedly atypical 17–year history of grievous misconduct, an upward departure under section 4A1.3 was warranted.

### B. *Prior Uncounted Convictions.*

■ The appellant also contests the second pillar underpinning the upward departure: the district court's reliance on the seven prior convictions that were excluded from the CHC calculation. Because the court did not rest its departure analysis on the pattern

of protracted domestic violence alone, but on the combined effect of that pattern and the litany of uncounted convictions, we must address this assignment of error.

■ Section 4A1.3 specifically authorizes courts to consider prior uncounted convictions, *see* U.S.S.G. § 4A1.3(a), and an upward departure is appropriate if convictions that were excluded from the CHC calculation for reasons such as remoteness "evince some significantly unusual penchant for serious criminality." *United States v. Aymelek,* 926 F.2d 64, 73 (1st Cir.1991).

Here, the uncounted convictions involved a 1977 assault with a dangerous weapon; a 1979 conviction for operating a motor vehicle so as to endanger; four convictions in 1980 (two separate larcenies, an episode of larceny by check, and an incident that involved breaking and entering into a motor vehicle); and a 1992 conviction for operating an unregistered, uninsured, and uninspected motor vehicle. Judge Carter's assessment that the seven convictions for the most part represented serious offenses cannot be gainsaid, and, when considered against the backdrop of the appellant's protracted history of spousal abuse, such convictions are "sufficient to remove the offender from the mine-run of other offenders." *Id.* Under these circumstances, a departure is appropriate. *See id.*

Swimming upstream against this reality, the appellant asseverates that the age of these convictions dispels any notion that they indicate an increased likelihood of recidivism. This asseveration lacks force. To be sure, the appellant committed the uncounted offenses between 17 and 20 years ago.[6] But, when considered in conjunction with the counted offenses and the 17–year history of domestic abuse, they form discernible links in a long chain of persistent misconduct. Given this solid basis for a powerful inference of recidivism and for a finding that the string of uncounted convictions reflect a rather unusual proclivity for serious criminality, we detect no abuse of discretion in the lower court's reliance on the uncounted convictions.

---

6. The parties, like the sentencing court, focus their attention on the six convictions that were excluded from the CHC computation on temporally-related grounds. We follow their lead and omit any separate discussion of the excluded 1992 conviction (which, in the overall scheme of things, appears to carry little weight).

*See United States v. Pratt,* 73 F.3d 450, 453 (1st Cir.1996) (ratifying decision to depart upward based, inter alia, on outdated, uncounted convictions for "serious dissimilar [mis]conduct"); *United States v. Tilley,* 964 F.2d 66, 74–76 (1st Cir.1992) (similar); *Aymelek,* 926 F.2d at 73 (holding that a sentencing court properly relied on seven outdated convictions "distinguished by their numerosity and dangerousness" in considering an upward departure); *see also Doe,* 18 F.3d at 45 (holding that uncounted convictions for dissimilar misconduct, remote in time, can form the basis for an upward departure).

### C. *Refusal to Seek Treatment.*

■ In pronouncing sentence, the district court mentioned the appellant's failure to pursue counseling for alcohol abuse and domestic violence. The appellant claims that the court erroneously employed this finding as a third factor justifying the sentence, and contests it both as a matter of law (he asserts that refusal to seek treatment cannot form the basis for a departure) and as a matter of fact (he asserts that he had begun treatment before his arrest).

Speaking broadly, the absence of a mitigating factor ordinarily cannot be treated as the presence of an aggravating factor, and, therefore, it might arguably be error to premise an upward departure on a finding, simpliciter, that a defendant refused to seek voluntary treatment.[7] We decline to pursue the point for two reasons. First, the record in this case, read as a whole, casts doubt upon the appellant's claim that the court used this finding as an independent basis for departing. Rather, the sentencing transcript suggests that the court considered the defendant's failure to seek help primarily as evidence that Brewster had "every prospect of continuing [the violent domestic abuse] in the future" and of continuing to "indulg[e] in a

dangerous and highly reprehensible ... course of conduct."

■ Second, to the extent—if at all—that the court blended this finding into the departure mix, any error would be harmless. When a departure rests on a combination of valid and invalid grounds, a reviewing court should uphold it as long as (1) the extent of departure is reasonable in relation to the valid grounds, (2) the exclusion of the invalid ground does not undermine the departure rationale articulated by the sentencing court, and (3) whole-record review offers an assurance that excision of the invalid ground probably would not have altered the sentence imposed. *See United States v. Diaz–Bastardo,* 929 F.2d 798, 800 (1st Cir.1991); *see also Figaro,* 935 F.2d at 7.

In this instance, it is readily apparent that the district court's decision to depart depended primarily on the appellant's prolonged campaign of domestic violence and secondarily on the uncounted convictions. It is equally apparent that those grounds, standing alone, are fully adequate to support the departure. What the court perceived to be the appellant's refusal to seek treatment was at most a throw-in—a lagniappe that in all likelihood did not sway, or even affect, the decision to depart. Hence, we rule that the district court's superfluous "refusal to treat" comments, whether or not intended as an additional ground for departure, do not undermine the sentence.

## V. THE REASONABLENESS OF THE DEPARTURE

■ Having determined that the stated grounds are legally and factually sufficient to support the sentencing court's decision to depart, our final task is to assay the degree of departure. The yardstick is reasonableness. *See United States v. Quinones,* 26

---

7. This situation is unlike *United States v. Shrader,* 56 F.3d 288 (1st Cir.1995), a case in which the defendant unsuccessfully challenged a criminal history departure granted on the basis that his CHC significantly understated both his criminal history and his proclivity for recidivist behavior. We noted, inter alia, four incidents, not included in the CHC computation, during which Shrader operated a motor vehicle while under the influence of alcohol, and we further noted that the

CHC "did not account for the fact that Shrader had thrice been ordered to undergo rehabilitation programs designed to deter the very behavior underlying these incidents." *Id.* at 293. We held that this "record of persistently disregarding the law" rendered the case sufficiently unusual to warrant an upward departure. However, it was not Shrader's failure to seek treatment, but his flagrant disregard of judicial directives, that helped to establish his recidivist tendencies.

F.3d 213, 219 (1st Cir.1994); *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir. 1989); *see also* 18 U.S.C. § 3742(e)(3) (1994). This criterion requires us to consider not only the trial court's reasons for departing, *see* 18 U.S.C. § 3742(e)(3)(B), but also "the overall aggregate of known circumstances pertaining to the offense of conviction and to the offender who committed it," *United States v. Ocasio,* 914 F.2d 330, 337 (1st Cir. 1990). Furthermore, we must determine whether a sentencing court that purports to undertake a so-called horizontal departure,[8] such as a criminal history departure under section 4A1.3, has fulfilled its guideline-imposed obligation to evaluate adjacent criminal history categories in sequence. *See, e.g., Pratt,* 73 F.3d at 453 (concluding that a court seeking to depart pursuant to section 4A1.3 must determine that the offender's criminal history is similar to the criminal histories of defendants in the CHC to which the court wishes to migrate); *Aymelek,* 926 F.2d at 70 (explaining that "section 4A1.3 departures require the use of analogies by, in effect, moving from one criminal history category to another"); *see also United States v. Tropiano,* 50 F.3d 157, 162 (2d Cir.1995) (holding that, under section 4A1.3, a court is required to "proceed[ ] sequentially from the criminal history category determined by the defendant's criminal history point score through each higher criminal history category until it settles upon a category that fits the defendant"). Because a sentencing court has firsthand exposure to the accused and a more intimate knowledge of the circumstances upon which the decision to depart is premised, appellate courts should disturb determinations implicating degrees of departure only if it clearly appears that the sentencing court abused its considerable discretion. *See Diaz–Villafane,* 874 F.2d at 49–50.

In this instance, the court leapfrogged over CHC IV and departed from CHC III to CHC V, thereby upgrading the GSR from a maximum of 41 months to a maximum of 63 months. It then imposed a 63–month sentence. The court reasoned that this incarcerative term, followed by three years of supervised release, would accomplish two things: it would ensure judicial supervision of the appellant's activities until his youngest son was old enough to leave home, and it would appropriately reflect both the seriousness of the appellant's criminality and the concomitant risk of recidivism. We find nothing unacceptable in the extent of the departure.

At the threshold, we dismiss out of hand the appellant's suggestion that the district court failed adequately to explain its reasons for selecting a departure of this magnitude. The requirement that courts departing horizontally must look to adjacent criminal history categories in sequence is important, but it is not to be construed in a robotic manner. *See Aymelek,* 926 F.2d at 70. Here, though the court did not explicitly discuss the inadequacy of CHC IV, it made the rationale for its choice of CHC V transparently clear. Moreover, the court's explanation of why a sentence available under CHC V satisfied its concerns—particularly its concern about Mrs. Brewster's welfare in relation to the childrens' ages—served de facto as an explanation of why CHC IV would not suffice. Accordingly, the explanation substantially complies with the requirement contained in section 4A1.3.

The appellant's related claim that the extent of departure is draconian deserves scant comment. The court departed upward by 22 months to a point approximately 50% above the maximum allowed under the original GSR. We are mindful that sentencing courts have substantial leeway regarding degrees of departure. *See United States v. Rivera,* 994 F.2d 942, 950 (1st Cir.1993); *Aymelek,* 926 F.2d at 69 (citing *United States v. Aguilar–Pena,* 887 F.2d 347, 350 (1st Cir.1989)); *Diaz–Villafane,* 874 F.2d at 52. Although

---

8. Departures pursuant to U.S.S.G. § 4A1.3 are considered horizontal because, in selecting an adequate criminal history category, "the court moves horizontally across the sentencing table through successively higher CHCs until it reaches an appropriate, or 'reflective' sentencing range." *United States v. Hardy,* 99 F.3d 1242, 1248 (1st Cir.1996). By contrast, U.S.S.G. § 5K2.0 authorizes a court to depart by moving along the vertical axis of the sentencing table and selecting an offense level that reflects the impact of the aggravating (or mitigating) circumstance which makes the offense of conviction unusual. *See id.*

the extent of the departure in the instant case is substantial, we believe that the departure-justifying circumstances and the extent of the departure are in reasonable balance. No more is exigible. *See United States v. Harotunian,* 920 F.2d 1040, 1045–46 (1st Cir. 1990); *see also United States v. Hardy,* 99 F.3d 1242, 1253 (1st Cir.1996) (affirming upward departure of 300% based in part on defendant's "persistent ten-year history of violent anti-social behavior").

## VI.  CONCLUSION

We need go no further.  We hold that U.S.S.G. § 4A1.3 provided legal authority for the court to depart for uncharged dissimilar misconduct (here, an ingrained pattern of domestic violence) of a kind that evinced both the defendant's significant likelihood of recidivism and the seriousness of his criminal past.  We also hold that, in the unique circumstances of this case, the long and documented history of spousal abuse, combined with a plethora of uncounted prior convictions, amply justified an upward departure of the magnitude essayed by the sentencing court.

*Affirmed.*

### APPENDIX

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.  Such information may include, but is not limited to, information concerning:

(a) prior sentence(s) not used in computing the criminal history category (*e.g.,* sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes....  The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines.  However, a prior arrest record itself shall not be considered under § 4A1.3.

U.S.S.G. § 4A1.3 (1995).