**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Betty KORAN, Defendant-Appellant.**

**No. 71-1367.**

United States Court of Appeals,
Tenth Circuit.

Jan. 10, 1972.

James A. Pusateri, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for plaintiff-appellee.

Newell A. George, Kansas City, Kan., for defendant-appellant.

Before PICKETT, HILL and DOYLE, Circuit Judges.

**WILLIAM E. DOYLE, Circuit Judge.**

Defendant-Appellant seeks reversal of a conviction by the court, the jury having been waived, in a case in which she was charged with violation of 18 U.S.C. § 659 which prohibits the buying, receiving or having in one's possession goods stolen from interstate commerce, knowing them to have been stolen.[1] The government and the defendant stipulated that the fur coats described in the indictment were stolen from REA Express and that at the time of the taking the coats were moving in commerce from Tulsa, Oklahoma to Kansas City, Missouri. It was also stipulated that the value of the property exceeded $100.00.

Two of the coats mentioned in the indictment were conceded to have been delivered to the FBI by the defendant on or about September 22, 1969, at Kansas City, Kansas, whereas two of the coats were recovered from one Edward Egnatic on or about July 2, 1969. Defendant admittedly delivered the Leopard and

---

1. Count 1 of the indictment charged:
    "On or about June 14, 1969, in the District of Kansas, and within the jurisdiction of this Court,
        EDWARD JOSEPH EGNATIC
        BETTY KORAN
    RONALD FRANCIS VISNOSKY unlawfully, wilfully and knowingly did have in their possession chattels of a value in excess of $100.00, to-wit: one Natural Somali Leopard Coat of the approximate value of $8,500.00; one Natural Let-out Ranch Mink Coat of the approximate value of $3,500.00; one Natural Ceruleau Grey Mink Jack- et of the approximate value of $1,250.00; and one Black Dyed Swakara Broad Tail Jacket of the approximate value of $500.00, which had been embezzled, stolen and unlawfully taken and carried away while in the custody of REA express via Braniff Air Lines moving in interstate commerce from Tulsa, Oklahoma, to Kansas City, Missouri, and Edward Joseph Egnatic, Betty Koran and Ronald Francis Visnosky then knew the said chattels to have been stolen, all in violation of 18 U.S.[C.]A. 659 and 2." [sic]

Mink coats to Egnatic and received from him the sum of $1,200.00.[2]

The undisputed evidence established that the fur coats were stolen by the defendant's son-in-law who was then an employee of REA Express at the airport in Kansas City, Missouri. The theft occurred on June 14, 1969. On that same day the son-in-law, Ronald Visnosky, delivered the coats to the defendant at her place of business, the Riverview Nightclub in Kansas City. According to Visnosky's testimony he had talked previously to defendant about picking up property of this kind, or diamonds, and delivering it to her. The coats were placed in the defendant's car while it was parked outside of the Riverview Nightclub in Kansas City, Kansas, and Visnosky insisted that defendant was advised that they were in the car. The coats were in a burlap bag which had an REA tag on the outside. Visnosky testified positively that defendant knew that the property was stolen as of the time of the delivery.

As previously noted, Koran delivered two of the coats to Egnatic and these were recovered by the FBI in early July. Significantly, defendant retained possession or at least control of the other two coats until late in September at which time, following interrogation of her by the FBI, she delivered the remaining two coats to the FBI.

At trial the credibility of the son-in-law, Visnosky, was a major issue. The court did not determine whether Visnosky or the defendant was telling the truth as to her knowledge of the stolen character of the fur coats. The court held that apart from Visnosky's testimony the record clearly established that even though defendant might not have known of the stolen character of the coats at the time of their delivery to her, she became aware of it subsequently while still in possession of them and, therefore, that she was guilty of possession with knowledge that the goods had been stolen.

The main issue raised by defendant is one of law: whether it was necessary for the government to prove that she had the requisite criminal intent at the time of the delivery of the property to her.

█ It is, of course, essential that a defendant charged with possession of stolen goods must be shown to have had guilty knowledge. Tingley v. United States, 34 F.2d 1 (10th Cir. 1929). The decision of this court in Lewis v. Hudspeth, 103 F.2d 23 (10th Cir. 1939), if not exactly in point, is at the very least strongly analogous. There it was said:

To convict the accused on the first count of feloniously retaining the possession of the stolen property, it was not necessary to prove that the accused knew the property was stolen at the time he received it, it being sufficient to establish that he retained it knowing of its stolen character. (103 F.2d at 24).[3]

██ We are of the opinion that the offense of possession of stolen goods is distinct from the offense of receiving stolen goods. The statute defines these offenses in the disjunctive and, therefore, clearly reflects the congressional intent that there were to be distinct crimes. This construction is reasonable because in instances similar to the case at bar the long continued possession of goods may well allow circumstances to give rise to knowledge that the property had been stolen even though the original receipt of the goods may have been innocent.

Defendant's citations are not in point. Generally they point up the principle

2. Her explanation was that this was a loan and not a sale.

3. See also 76 C.J.S. Receiving Stolen Goods § 8, p. 12:
  Where by statute it is made an offense both to receive and to have, or retain, in possession stolen goods, one may be convicted of the latter offense even though he acquired guilty knowledge that they were stolen subsequent to receiving them.

that the offense of receiving stolen goods requires proof of guilty knowledge at the time of the reception. See Wolf v. United States, 290 F. 738 (C.C.A.2, 1923). Gay v. United States, 408 F.2d 923 (8th Cir. 1969) deals with the offense of obtaining goods by fraud. Schaffer v. United States, 221 F.2d 17 (5th Cir. 1955) again emphasizes the necessity generally for proof of guilty knowledge.

 Finally, defendant urges that the trial court failed to give favorable consideration to the defendant's character witnesses and was too much influenced by testimony of the accomplice. This argument fails to recognize that the basic undisputed circumstances are amply sufficient to establish the defendant's guilt. Indeed it can be said that the proof is overwhelming and thus it cannot be said that the trial court abused its discretion in adjudging defendant guilty.

We conclude from a careful reading of the record that there is no error substantial or insubstantial.

Accordingly, the judgment is affirmed.