**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fred S. BRASLAWSKY,
Defendant–Appellant.**

**No. 89–3389.**

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1990.

Decided Sept. 20, 1990.

John W. Vaudreuil, Daniel P. Bach, Asst. U.S. Attys., Madison, Wis., for plaintiff-appellee.

Charles K. Piet, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Fred S. Braslawsky pleaded guilty to one count of interstate transportation of stolen property, *see* 18 U.S.C. § 2314, and his appeal presents us with a Sentencing Guidelines issue of first impression. Braslawsky and Phil Luebbing had burglarized at least eleven businesses in northern Wisconsin. The total value of the property stolen amounted to $147,000. Luebbing and Braslawsky would transport the property they had stolen across state lines and sell it to third parties. Local Wisconsin law enforcement personnel and FBI agents eventually caught up with the pair.

In exchange for Braslawsky's cooperation, the federal government consented to a plea agreement whereby Braslawsky would plead guilty to one count of interstate transportation of stolen property. In partial fulfillment of his side of the agreement, Braslawsky provided information and testimony against others involved in the crime ring.

Using the Sentencing Guidelines, the district court found the base offense level for Braslawsky's crime to be four. *See* U.S.S.G. § 2B1.2(a). Eight points were added because the total value of the thefts was between $100,000 and $200,000. *See* U.S.S.G. §§ 2B1.1(b)(1), 2B1.2(b)(1). Finally, four points were added because the district court determined that Braslawsky was "in the business of receiving and selling stolen property." U.S.S.G. § 2B1.2(b)(3)(A). With a two-point reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, the defendant's offense level indicated a sentence of fifteen to twenty-one months.

At the sentencing hearing, the district court noted Braslawsky's substantial assistance to law enforcement authorities. The court further commented that this was the kind of assistance that could warrant a downward departure from the Guidelines sentencing range. *See* U.S.S.G. § 5K1.1. The district court, however, believed that the Guidelines provided for a far too lenient sentence for Braslawsky's crime, especially considering that Braslawsky held a relatively privileged socioeconomic status as compared to the typical street criminal. Therefore, the district court declined to depart downward from the range contained in the Guidelines' sentencing table. Finding no valid reason to depart upward, the district court then sentenced Braslawsky to twenty-one months in prison, the highest sentence possible within the Guidelines range.

■ Braslawsky first argues that the district court abused its discretion by refusing to consider a downward departure from the Guidelines range or even a sentence lower than the upper limit of the range. Because Congress has precluded us from reviewing sentences within the applicable Guidelines range, we lack jurisdiction over this part of his appeal. *See United States v. Gant*, 902 F.2d 570, 572–73 (7th Cir.1990); *United States v. Franz*, 886 F.2d 973 (7th Cir.1989); 18 U.S.C. § 3742(a). In his reply brief, Braslawsky gives a passing acknowledgement to the due process clause. We fail to see how the defendant's due process rights were violated by a district judge who believed the defendant deserved a harsher sentence but dutifully followed the appropriate law and sentenced the defendant to no more than the maximum allowed by statute. If anything, Braslawsky was fortunate: were it not for the Guidelines, the district judge made it clear that she would have sentenced him to far more than twenty-one months, and we cannot say that he would not have deserved it.

■ Braslawsky's second argument, however, is meritorious. As we discussed before, the district court awarded Braslawsky four additional points because it believed he was "in the business of receiving

and selling stolen property" within the meaning of Guidelines subsection 2B1.-2(b)(3)(A). The issue is whether the language of this subsection applies to a person who sells the property that he has stolen himself. Without precedent or direct legislative history to guide us, we believe that this subsection does not apply.

The common understanding of a person in the business of receiving and selling stolen property is a professional fence and not a person who sells property that he has already stolen. *Cf. United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990) (using the term "fence" to describe conduct covered by subsection 2B1.2(b)(3)(A)). The Guidelines suggest as much when they justify the four-point enhancement for a fence: "Persons who receive stolen property *for resale* receive a sentence enhancement because the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes." U.S. S.G. § 2B1.2 comment (backg'd) (emphasis added). The word "resale" necessarily implies that a prior sale must have occurred. Thus, the background commentary to section 2B1.2 would suggest that the four-point enhancement of subsection (b)(3)(A) applies only to those persons who engage in the business of receiving stolen property through black market transactions.

The purpose of subsection (b)(3)(A) does not lead to a contrary conclusion. As the background commentary states, a professional fence facilitates the commission of many thefts by creating a clearinghouse for stolen goods. The criminal who sells only his own booty does not encourage the commission of other thefts in the same manner. The incongruity of subsection (b)(3)(A)'s purpose and Braslawsky's circumstances further leads us to the conclusion that the statute does not apply.

The government focuses on the word "business" and argues that subsection (b)(3)(A) applies because Braslawsky and Luebbing were certainly engaged in a criminal enterprise for profit. That may be, but subsection (b)(3)(A) requires that the "business" be the criminal enterprise of

receiving and selling stolen property; Braslawsky, at most, was engaged in the criminal enterprise of stealing and selling stolen property. For us to accept the government's argument, we would have to divorce the word "business" from the rest of the statute.

The government also contends that at some point in their accumulation of $140,-000 in stolen goods, Braslawsky and Luebbing transformed from a small-time burglary outfit to a business of receiving and selling stolen property. The value of the goods that Braslawsky and Luebbing stole cannot qualify them for the subsection (b)(3)(A) enhancement, because we would then be double-counting the enhancement for the value of the stolen property as set forth in section 2B1.1(b)(1)'s valuation table. We also have trouble with stigmatizing Braslawsky with the business of receiving and selling stolen property simply because he and Luebbing sold their stolen wares to a larger criminal enterprise, which has not been fully detailed in the record. Where appropriate, the Guidelines are very express in their punishment of organized criminal schemes. *See, e.g.,* U.S.S.G. §§ 1B1.3(a); 2B1.1(b)(6); 2B1.2(b)(5); 2B6.-1(b)(3).

Other than using them himself, about the only thing a thief can do with his stolen goods is to sell them. This fact of life provides the most compelling reason for our interpretation of subsection (b)(3)(A). If every thief who sold his stolen property was in the business of receiving and selling stolen property, then subsection (b)(3)(A) would be a circuitous method for the Sentencing Commission to punish the transportation, receipt, or sale of stolen property. Instead of relying on a four-point enhancement, the Sentencing Commission could have simply raised the base offense level by four points.

We agree with the district court that twenty-one months is a short period of time for the series of crimes that the defendant committed, but that was the highest punishment the Guidelines, as interpreted by the district court, allowed. Now, the possible punishment will unfortunately be even

lower. Nevertheless, we must interpret the Guidelines as written, and we do not believe that subsection 2B1.2(b)(3)(A)'s enhancement for being in the business of receiving and selling stolen property applies to defendants who have only sold the property that they have stolen. Accordingly, the sentence imposed on Braslawsky must be vacated and the case remanded for resentencing. To the extent that Braslawsky's appeal asked us to review the district court's refusal to depart from the Guidelines, it is dismissed for want of appellate jurisdiction. Circuit Rule 36 does not apply.

DISMISSED IN PART, REVERSED & REMANDED.