[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12815
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20921-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ANGEL FELIPE TORRES,
a.k.a. "El Calvo",

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 6, 2016)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Luis Angel Felipe Torres appeals his 61-month imposed after pleading guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  On appeal, he argues that the district court erred by holding him accountable for loss amounts under U.S.S.G. § 2B1.1(b)(1) arising from relevant conduct in pending state court cases, and that the court erred in applying a two-level enhancement under § 2B1.1(b)(4) for being in the business of receiving and selling stolen property.

Torres argues on appeal that the district court erred by including conduct from pending state court cases, which were not included in the indictment.  He argues that the broad inclusion of uncharged conduct undermines the Sixth Amendment obligation of defense counsel to provide effective and/or competent assistance in the plea phase.

This Court reviews *de novo* the district court's interpretation and application of the Sentencing Guidelines.  *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997).  Section 2B 1.1 (b)( 1) instructs the sentencing court to increase the offense level by six points if the loss associated with the offense is greater than $30,000, but less than $70,000.  U.S.S.G. § 2B1.1(b)(1)(D)-(E).  Regarding relevant conduct, § 1B1.3 instructs that, for sections such as § 2B1.1, that determine the defendant's offense level largely on the basis of the total amount of loss, the court shall consider all acts and omissions committed, aided, abetted,

2

counseled, commanded, induced, procured, or willfully caused by the defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(1)(A) and (a)(2), 3D1.2(d).

At sentencing, the district court may take into account relevant conduct for which the defendant was not charged or convicted, so long as the government proves such conduct by a preponderance of the evidence. *See United States v. Exarhos*, 135 F.3d 723, 730 (11th Cir. 1998) (conduct not contained in the indictment may be considered at sentencing); *Barakat*, 130 F.3 d at 1452 (conduct for which the defendant was acquitted may be considered at sentencing).

Generally, it is preferable to decide an ineffective assistance of counsel claim on collateral review instead of on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694, 155 L. Ed. 2d 714 (2003). "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Id.* Accordingly, this Court generally does not review claims of ineffective assistance of counsel raised on direct appeal when "the district court did not entertain the claim nor develop a factual record." *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).

Torres's legal argument that the court should not consider pending state court conduct, whether uncharged in the indictment or which eventually results in an acquittal, is foreclosed by binding precedent. *See Exarhos*, 135 F.3d at 730; *Barakat*, 130 F.3d at 1452. Moreover, Torres does not challenge the accuracy of the factual underpinnings to the relevant conduct, nor does he argue that the preponderance standard has not been satisfied.  His argument that a defendant's Sixth Amendment right to competent counsel in the plea phase can be undermined by the inclusion of uncharged conduct is speculative.  Torres does not clarify how his counsel's representation during his specific plea process was undermined by the inclusion of the loss amount from uncharged relevant conduct.  Indeed, Torres never requested to withdraw his plea, and the plea agreement warned both counsel and Torres that (1) Torres's sentence would be determined based in part on the results of the PSI investigation, and (2) the government reserved the right to inform the court and the probation office of all relevant information concerning the offenses committed "whether charged or not."  Further, to the extent Torres is asserting that counsel's performance was in fact deficient, Torres does not assert, and a review of the record does not reveal, that he ever alleged ineffective assistance of counsel before the district court.

Torres argues the district court improperly applied the two-level enhancement under § 2B 1.1 (b)(4) for being in the business of receiving and

4

selling stolen property.  He argues that he is a thief, "not a fence," and thus, the government failed to show that he both received and sold the stolen property.

This Court reviews the district court's underlying findings of fact for clear error and application of the Guidelines to those facts *de novo*.  *United States v. Saunders*, 318 F.3d 1257, 1263 (11th Cir. 2003).  Under § 2B1.1(b)(4), a defendant's offense level is enhanced by two points "[i]f the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property." U.S. S. G. § 2B1.1 (b)(4). Application Note 5 states that for the purpose of determining whether a defendant is in the business of receiving and selling stolen property under subsection § 2B1.1(b)(4), the court shall consider the following non-exhaustive factors: (A) the regularity and sophistication of the defendant's activities, (B) the value and size of the inventory of stolen property maintained by the defendant, (C) the extent to which the defendant's activities encouraged or facilitated other crimes, and (D) the defendant's past activities involving stolen property. *Id*., comment. (n.5).

In *Saunders*, this Court reviewed a similar enhancement under § 2B6.1(b)(2), the guideline covering altering or removing motor vehicle identification numbers. 318 F.3d at 1262.  Although this Court considered the factors set out in § 2B1.1 (b)(4), it "decline[d] to draw directly" from § 2B1.1 (b)(4), and expressly adopted a case-by-case approach employing a totality of the

circumstances test to determine whether a defendant was in the fencing business, and thus subject to the enhancement. *Id*. at 1264-65. "[T]he defendant must have, at a minimum, acted as a fence," that is, received the stolen property-by accepting it and having either physical control of or apparent legal power over-and then sold it. *Id.* at 1272-73, 1278. "Beyond that, the sentencing court must examine the totality of the circumstances with a particular emphasis on the regularity and sophistication of the illegal activity to determine whether the defendant's conduct amounted to a fencing business." *Id.* at 1273. Factors the court may consider include "the value of the stolen property, the defendant's past activities involving stolen property and the extent to which the illegal operations encouraged or facilitated other criminal activity." *Id.* A defendant himself, and not just his co-conspirators, must have acted as a fence for the enhancement to apply. *Id.* at 1263.

In *Saunders*, this Court decided that "the enhancement applie[d] to a thief's wife who (1) submitted fraudulent paperwork to register at least twenty vehicles stolen by her husband over a ten-year period; (2) conveyed title to, and accompanied her husband in delivering, the vehicles to buyers; (3) permitted some of the vehicles to be kept on her property; and (4) drove at least one of the stolen vehicles." *Id*. at 1261. This conduct showed that the defendant both received and sold stolen property with regularity and sophistication. *Id.* at 1261, 1271-72. It is

6

settled "that a thief who sells goods that he himself has stolen is not in the business of receiving and selling stolen property." *Id*. at 1263 n.7.

In *Bradley*, this Court also clarified that § 2B1.1(b)(4) was meant to apply to "those who act as a fence," and not the actual thieves. *United States v. Bradley*, 644 F.3d 1213, 1287 (11th Cir. 2011). The defendant in *Bradley* was the operative actor in the scheme, and by paying others to steal the drugs that he would later resell, he could have been charged with the theft of most, if not all, of the prescription drugs stolen for later sale. *Id.* Because he was the thief of all of the pharmaceuticals later sold, this Court found him to be not a fence, but merely a thief. *Id.*

The district court did not err in applying the § 2B1.1(b)(4) enhancement. Torres conceded that he recruited others to steal checks, and he later cashed those checks, which supports a finding that he both personally stole, and "received" stolen checks from others. Torres also argued that he was "principally paid in cocaine," which supports a finding that he also "sold" the checks, some of which, as Torres admitted, were stolen by those he recruited. Unlike in *Bradley*, Torres did not himself steal all of the checks he later "sold," and did not pay someone else to steal them, and thus he is not simply a thief. Similar to *Saunders*, Torres acted as a fence, that is, he both received property that was stolen and sold stolen property.

AFFIRMED.